UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 10 SHEPHERDS LN MAP LLC, | Case No. 8-26-73055-las |
| Debtor. | |

-------------------------------------------------------------x

**DEBTOR'S OBJECTION TO SECURE BRIDGE FUND 1, LLC'S MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE:

10 Shepherds LN MAP LLC, the debtor and debtor in possession (the "Debtor"), by its undersigned counsel, respectfully submits this objection (the "Objection"), together with the accompanying Declaration of Freddy Abitbol dated August 30, 2026 (the "Abitbol Declaration") and the Declaration of Karamvir Dahiya requesting that the Court accept this late-filed Objection, in opposition to the Motion for In Rem Relief from the Automatic Stay [ECF No. 10] (the "Motion") filed by Secure Bridge Fund 1, LLC ("Secure Bridge" or "Movant"), and states as follows:

## PRELIMINARY STATEMENT

1. Movant asks this Court for the most drastic form of stay relief the Code provides — an *rem* order under 11 U.S.C. § 362(d)(4) binding the Debtor's sole asset, the family home of its principal, for two years — on a motion that is signed only by counsel, is supported by no affidavit or declaration of any person with knowledge, and never once mentions the fact that decides it: the Property is worth $7,800,000.00 and Movant's asserted claim, even taken at Movant's own inflated and disputed figure of $5,136,413.69, leaves an equity cushion of more than $2.66 million — over 34% of the value of the collateral. Measured against the amount actually confirmed by the

Referee's Report and the Judgment of Foreclosure and Sale, $4,796,344.58, the cushion exceeds $3 million, or roughly 38%.

2. That omission is dispositive. A movant invoking § 362(d)(1) for lack of adequate protection must, to make out its prima facie case, demonstrate "a decline or a threatened decline in the value of the collateral." 3 Collier on Bankruptcy ¶ 362.10 (16th ed. 2026); *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994). The Motion nowhere alleges that the Property is declining in value, that it is uninsured, that it is being wasted, or that Movant's collateral position is threatened in any way. And the burden the Debtor does bear — proving the equity cushion it asserts as adequate protection, *Elmira Litho*, 174 B.R. at 904 — the Debtor carries several times over: the cushion is documented, unrebutted, and large enough to absorb every dollar of interest, and every reasonable fee, cost and charge, that accrues to Movant under 11 U.S.C. § 506(b) through confirmation and well beyond.

3. The request for *in rem* relief fares no better. Section 362(d)(4) requires the Court to find that this petition "was part of a scheme to delay, hinder, or defraud creditors." What the record actually shows is a single-purpose entity — formed at the lender's own insistence — that filed one prior chapter 11 case, prosecuted it to a combined plan of reorganization and disclosure statement proposing payment of Movant's claim in full in cash, supported by a countersigned replacement-financing commitment of up to $30,000,000, and whose case was dismissed without any bar to refiling. The United States Trustee asked that the dismissal be with prejudice for one year; the dismissal order entered May 21, 2026 imposed no such condition, no condition under 11 U.S.C. § 109(g), and no condition under 11 U.S.C. § 349(a). When Movant re-noticed its foreclosure sale, the Debtor exercised precisely the right the dismissal order left intact. Two filings by the same debtor, each followed by genuine reorganization effort and full disclosure, are not the "artful plot"

the statute targets — least of all against a creditor whom the Debtor has at all times proposed to pay in full, with interest.

4. The Motion should be denied. In the alternative, if the Court perceives any risk to Movant, the remedy is to condition the stay — for example, on the Debtor's adherence to a plan timetable — not to terminate it, and certainly not to enter a two-year *in rem* order against a family's principal residence on an evidentiary record consisting of nothing but attorney argument. The contrast with the Debtor's opposition is stark: it is supported by the sworn declaration of Freddy Abitbol, the Debtor's mortgage broker, attesting that replacement financing is in underwriting today, with approval expected on or before September 25, 2026 — before the December 1, 2026 plan deadline. Abitbol Decl. ¶¶ 3–6.

## BACKGROUND

### A. The Property, the SPE structure, and the loan

5. The Debtor is a single-purpose Delaware limited liability company whose sole member is Thomas K Makkos. Its only asset is the single-family residence at 10 Shepherds Lane, Port Washington (Incorporated Village of Sands Point), New York 11050, Section 4, Block B, Lot 364 (the "Property"). The Property is, and since its acquisition always has been, the principal residence of Mr. Makkos, his wife and their children. It has no tenants and produces no rental income.

6. The Debtor exists because the lender required it. In June 2023, Mr. Makkos sought financing to purchase the Property as his family home. Secure Bridge — which, on information and belief, shares its address at 200 Pequot Avenue, Southport, Connecticut with its servicer Stormfield Capital LLC and functions as an origination and holding vehicle for that institutional bridge-lending platform — required, as a condition of the financing, that the borrower of record be a single-purpose limited liability company. The loan closed on June 30, 2023: a Promissory Note of

$4,100,000.00 and a Building Loan Promissory Note of $200,000.00, secured by a Mortgage and a Building Loan Mortgage recorded July 26, 2023, guaranteed by Mr. Makkos personally. Mot. ¶¶ 1–7. The Debtor contends, and has expressly reserved the right to establish, that this structure was a device to evade HOEPA, TILA, RESPA and the New York Banking Law on what is in substance a residential mortgage loan on a principal dwelling — a loan carrying, among other things, default-rate interest of 24% per annum and layer upon layer of "deferred" default interest, late fees and extension fees.

7. Movant's own Motion describes the loan as a "commercial mortgage loan" secured by "commercial real and personal property." Mot. ¶ 1. The Property is a single-family home occupied by the borrower's principal and his family. Movant's need to recharacterize a family residence as "commercial property" in its very first paragraph is the Debtor's lender-liability case in miniature.

**B. Default, foreclosure, and the first chapter 11 case**

8. The loan was a short-term bridge loan that matured — after two extension agreements — on March 1, 2025. Mot. ¶ 10 & n.1. The default Movant alleges is a maturity default: the inability to refinance a balloon obligation, not a failure to make installment payments on a performing loan. Movant commenced foreclosure (Index No. 609211/2025, Sup. Ct. Nassau County), and on default obtained an Order Confirming Referee's Report of Amount Due and for Judgment of Foreclosure and Sale, signed November 5, 2025, confirming an amount due of $4,796,344.58, plus default-rate interest from August 22, 2025, costs of $2,452.67, an additional allowance of $300.00, and attorneys' fees of $31,193.22. Mot. ¶¶ 13–14, Ex. F. A foreclosure sale was noticed for January 27, 2026 at 3:00 p.m.

9. The Debtor filed its first chapter 11 petition that morning, Case No. 8-26-70355-las. In that case the Debtor: (a) filed its schedules and statements; (b) scheduled the Property and its

retained claims against Movant and Stormfield; (c) obtained a countersigned Letter of Intent from Rok Lending LLC dated April 14, 2026, executed April 23, 2026, for a replacement facility of up to $30,000,000 capped at 65% loan-to-value, cross-collateralized by the Property and two other substantial properties owned by Mr. Makkos outside bankruptcy; and (d) on May 11, 2026 filed a Combined Chapter 11 Plan of Reorganization and Disclosure Statement [Case No. 8-26-70355-las, ECF No. 30] providing for payment of Movant's allowed claim in full, in cash, at the effective date. Movant filed the only proof of claim in that case — Claim No. 1, asserting $5,136,413.69, entirely secured.

10. The United States Trustee moved to convert or dismiss, and asked in the alternative that dismissal be "with prejudice for one year." The motion was heard on May 19, 2026. The Court dismissed the case by Order entered May 21, 2026 [ECF No. 34], directing the filing of outstanding operating reports and payment of quarterly fees — and imposing no bar to refiling: no condition under § 109(g), no condition under § 349(a), and no in rem or prospective relief of any kind. The relief the United States Trustee requested and did not obtain is the very relief Movant now asks this Court to infer was somehow "already determined."

**C. The re-noticed sale and this case**

11. The Debtor had no intention of seeking bankruptcy protection a second time. Following the dismissal, the Debtor and Mr. Makkos proceeded toward the Rok Lending closing — a commitment that refinanced not only the Property but was cross-collateralized by Mr. Makkos's other real-estate holdings — and it was on that refinancing, not on this Court's protection, that they intended to rely. At the last minute, and for reasons Rok Lending never explained to the Debtor, the lender withdrew from its commitment, leaving the entire refinancing structure — the payoff of Movant, the treatment of the cross-collateral properties, everything the

closing was built around — in disarray. It was only then, with Movant's re-noticed sale bearing down and the replacement financing pulled out from under it through no act or omission of its own, that the Debtor turned again to chapter 11.

12. On July 2, 2026 Movant re-noticed the foreclosure sale for August 4, 2026 at 2:30 p.m. Mot. Ex. I. On August 3, 2026 the Debtor commenced this case — exactly what the without-prejudice dismissal left it free to do. The Debtor's schedules in this case again disclose the Property at $7,800,000.00, the retained claims against Movant and its servicer, and Movant's asserted claim of $5,136,413.69, scheduled as contingent, unliquidated and disputed. The Court has set December 1, 2026 as the deadline for the Debtor's plan and disclosure statement, and the Debtor intends to file well before that date.

13. Nor has the Debtor stood still since. As set forth in the accompanying Abitbol Declaration, for the last several months Freddy Abitbol — the Chief Executive Officer and President of Hypotec, Inc., a mortgage lending and brokerage firm, and a licensed mortgage loan originator (NMLS No. 331653) — has been working with Mr. Makkos to arrange refinancing so that the mortgage debt asserted against the Property can be paid, and that effort "is active and ongoing." Abitbol Decl. ¶¶ 1, 3. The initial structure was a facility cross-collateralized by multiple properties owned by Mr. Makkos, because lenders in this market advance only a percentage of appraised collateral value and the proceeds available against the Property alone, at prevailing loan-to-value advance rates, would not have covered the full payoff and transaction costs. *Id.* ¶ 4. When appraisal reports on certain of the additional collateral came in below expected values during underwriting, the total available loan amount was reduced and that structure did not proceed; Hypotec pivoted to refinancing other properties owned by Mr. Makkos to generate the cash needed to bridge the shortfall. *Id.* ¶¶ 5–6. That file is in underwriting now, with an approval expected on or

before September 25, 2026, and closing anticipated promptly thereafter; Mr. Abitbol has committed to keep the Debtor and this Court informed of material developments. *Id.* ¶¶ 6, 8.

## ARGUMENT

### POINT I: THE MOTION FAILS AT THE THRESHOLD — MOVANT OFFERS NO EVIDENCE AND IGNORES ITS STATUTORY BURDEN

14. A party seeking stay relief must make an initial showing of "cause." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause, . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."). The burden of going forward belongs to the movant on every ground it asserts: "the movant must still make a prima facie showing that it is entitled to the relief that it seeks," *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995), and "[f]ailure to prove a prima facie case requires denial of the requested relief." 3 Collier on Bankruptcy ¶ 362.10 (16th ed. 2026). On the *in rem* request the allocation is the same: the secured creditor "has the initial burden of proof as to all of the requisite elements" of § 362(d)(4). *In re Lee*, 467 B.R. 906 (B.A.P. 6th Cir. 2012); 3 Collier ¶ 362.05[19][a]. Notably, Movant does not invoke § 362(d)(2) — the one ground on which it would bear the statutory burden of proving that the Debtor lacks equity in the Property, 11 U.S.C. § 362(g)(1) — for the evident reason that no such proof exists: the equity exceeds $2.6 million.

15. The Motion is supported by no affidavit, no declaration, no appraisal, and no payment history — nothing but the state-court record and the argument of counsel. It never states the value of the Property. It never alleges the Property is declining in value, uninsured, or at risk. It never computes Movant’s claim as of the petition date. A movant that must demonstrate "a decline or a threatened decline in the value of the collateral" to establish lack of adequate protection cannot prevail on a record that is silent on value altogether. *In re Elmira Litho, Inc.*, 174 B.R. 892, 902–03

(Bankr. S.D.N.Y. 1994) (movant must make a prima facie showing; conclusory assertions of "cause" are insufficient). On that ground alone the Motion should be denied. *Accord* 2 Norton Bankr. L. & Prac. 3d § 43:54 (July 2026 update) ("As the moving party in the contested proceeding, the secured creditor must offer evidence as to this issue in order to make out a prima facie case.").

**POINT II: THERE IS NO CAUSE UNDER § 362(d)(1) — A 34% EQUITY CUSHION IS ADEQUATE PROTECTION AS A MATTER OF LAW**

16. The Property is scheduled at $7,800,000.00, by comparable sale. Movant's asserted claim — its own number, which the Debtor disputes — is $5,136,413.69. The cushion is $2,663,586.31, or 34.2% of the value of the collateral. Against the judgment amount of $4,796,344.58 the cushion is $3,003,655.42, or 38.5%. Even setting aside a generous allowance for accrued real-estate taxes and municipal charges (statutory liens that would be paid at any closing or sale), the cushion remains well in excess of twenty-five percent.

17. An equity cushion of this magnitude is, standing alone, adequate protection. *In re Mellor*, 734 F.2d 1396, 1401 (9th Cir. 1984) (20% cushion sufficient; collecting cases); *In re Elmira Litho*, 174 B.R. at 904; *In re Pine Lake Vill. Apartment Co.*, 19 B.R. 819, 825 (Bankr. S.D.N.Y. 1982) (equity cushion "the classic form of protection"). The treatise states the rule plainly: "an equity cushion is a common form of adequate protection for a secured debt," existing whenever "the value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim" — and where the margin is comfortable, "the debtor should not have to make periodic payments to protect the creditor's interest in the collateral." 3 Collier ¶ 362.07[3][d][i]; *accord Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085 (4th Cir. 1986); *Prudential Ins. Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336 (8th Cir. 1985).

18. Nor does the accrual of interest to Movant during the case supply the injury the Motion fails to plead. What adequate protection protects is the value of the collateral — not the creditor's ratio of collateral to debt. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–72 (1988); *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 730 (11th Cir. 1995) (an oversecured creditor's protected interest "encompasses the decline in the value of the collateral only, rather than perpetuating the ratio of collateral to debt"). Movant alleges no decline in the Property's value — none. And even measuring by the cushion itself, the arithmetic is not close: at Movant's asserted 24% default rate its claim accrues roughly $103,000 per month, so the $2.66 million cushion absorbs more than two years of accrual — through the December 1, 2026 plan deadline many times over — while § 506(b) assures Movant of its interest, and of its reasonable fees, costs and charges, in the meantime. The commentary is in accord: where there is "no diminution in the value of the security, . . . the security is not impaired and a secured creditor should not succeed in demanding that the debtor furnish additional protection"; the oversecured creditor "is compensated for this interval" by § 506(b) itself, whose accruing interest "will be added to the secured claim awaiting distribution under the plan." 2 Norton Bankr. L. & Prac. 3d § 43:45 (July 2026 update).

19. Movant's assertion that "Debtor has not made a payment towards the Indebtedness since February 2025," Mot. ¶ 29, is unsworn, and in any event proves nothing. The loan matured on March 1, 2025. Mot. n.1. Non-payment after maturity of a balloon bridge loan is the definition of a maturity default; it says nothing about dissipation of collateral or erosion of Movant's position. The authorities Movant collects are cases of undersecured or unprotected creditors facing genuinely eroding positions: in *In re Uvaydov*, 354 B.R. 620 (Bankr. E.D.N.Y. 2006), the debtor had failed for eleven months to make required post-petition mortgage payments; *In re Kaplan Breslaw Ash,*

*LLC*, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001), turns expressly on "property . . . declining in value"; *In re Schuessler*, 386 B.R. 458 (Bankr. S.D.N.Y. 2008), and *In re Davis*, 2024 WL 460483 (Bankr. S.D.N.Y. Feb. 6, 2024), concern individual debtors' ongoing contractual mortgage installments. None involves an oversecured creditor sitting behind a multi-million-dollar cushion on a matured loan whose full payment the debtor's plan proposes.

**POINT III: THIS CASE WAS NOT FILED IN BAD FAITH**

20. The standard Movant itself quotes defeats its argument: a petition is filed in bad faith only "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991). A debtor holding $2.66 million of equity in its sole asset, which in its immediately preceding case filed a combined plan and disclosure statement paying its only creditor in full in cash, supported by an executed $30,000,000 replacement-financing commitment, is the opposite of such a debtor.

21. Filing on the eve of a foreclosure sale is not bad faith; it is what the automatic stay exists for. The badges of bad faith catalogued in *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997), describe a debtor with no equity, no realistic prospect of reorganization, and a petition serving only as a litigation tactic. Here the Debtor has substantial equity to preserve for its estate and its sole member's family; its dispute with Movant includes substantive federal and state lender-liability claims that are property of the estate under § 541; and its reorganization is a refinancing-and-payment case of the most conventional kind. That the Debtor is a single-asset entity in a dispute with one principal creditor does not make the filing improper — the Debtor is an SPE because Movant required it to be one.

22. The Debtor does not shrink from the catalog Movant recites — a single asset, one principal secured creditor, few unsecured creditors, a filing on the eve of foreclosure. Those "very factors often considered in a bad faith analysis are patterned after a single asset case," which is why the doctrine "should be used sparingly to deny bankruptcy relief to statutorily eligible debtors only in extraordinary circumstances." 3 Collier ¶ 362.07[7][a]; *cf. Toibb v. Radloff*, 501 U.S. 157 (1991); *In re Victoria Ltd. P'ship*, 187 B.R. 54, 58–62 (Bankr. D. Mass. 1995) (mechanical application of the factors to single-asset debtors has "yielded harsh results" at odds with Congress's recognition, in the 1994 amendments, of the propriety of single-asset reorganizations). A two-party dispute likewise "does not, by itself, indicate bad faith. Other strong indicia of bad faith must be present." 3 Collier ¶ 362.07[7][a]; *see In re Ravick Corp.,* 106 B.R. 834 (Bankr. D.N.J. 1989). And here each item in the catalog is an artifact of the loan structure Movant itself dictated: the Debtor has one asset because Movant required a single-purpose borrower; it has one creditor because Movant is that entity's only lender; it has made no payment since February 2025 because the loan matured by its terms on March 1, 2025, leaving no installment schedule to perform — what fell due was the balloon itself, which is precisely what the plan proposes to pay; and it filed on the eve of the sale because that is when the stay was needed. The factor that separates ordinary single-asset cases from abusive ones — equity worth preserving and a genuine ability to pay — cuts entirely in the Debtor's favor.

23. Movant's repeated refrain that the prior case "already established" or "already determined" that the Debtor cannot reorganize, Mot. ¶¶ 33, 41, is not supported by anything in the record. The May 21, 2026 dismissal order made no findings of bad faith, made no finding that reorganization was impossible, and — although the United States Trustee expressly requested dismissal "with prejudice for one year" — imposed no bar to refiling. In this Circuit, courts that

intend to foreclose a future filing know how to say so and have ample power to do so. *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 337–41 (2d Cir. 1999). The Court did not say so. The refiling the dismissal order permitted cannot retroactively become evidence of bad faith.

24. The circumstances of the refiling confirm its good faith rather than undermine it. This case exists because a third party failed the Debtor: Rok Lending's unexplained, eleventh-hour withdrawal from a commitment it had countersigned collapsed a refinancing that would have paid Movant in full without any second bankruptcy case. A debtor that loses its exit financing through no fault of its own, and files only when the foreclosure sale of its principal's family home is days away, is doing precisely what chapter 11 exists for — using the breathing spell of the stay to replace its financing and preserve more than $2.6 million of equity for the estate. The intervening act of a stranger to the first case cannot be recast as the Debtor's own "scheme." And the effort did not end there: the sworn record now before the Court shows a replacement facility in underwriting, with approval expected on or before September 25, 2026 — evidence of exactly the "reasonable likelihood that the debtor intended to reorganize" that *Cohoes* asks about. Abitbol Decl. ¶¶ 3–6.

**POINT IV: MOVANT DOES NOT COME CLOSE TO THE SHOWING § 362(d)(4) REQUIRES**

25. Section 362(d)(4) authorizes *in rem* relief only upon a finding that "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors" that involved, as relevant here, "multiple bankruptcy filings affecting such real property." The Debtor accepts that since the 2010 technical amendment the phrase is disjunctive — a scheme to delay or hinder suffices, without proof of fraud. *In re Kearns*, 616 B.R. 458, 467 (Bankr. W.D.N.Y. 2020); 3 Collier ¶ 362.05[19][a]. But the disjunction does not dilute the noun it modifies. Whatever its object, there must be a "scheme" — "a plan or design or an 'artful plot,'" *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008); *accord In re Montalvo*, 416 B.R. 381, 386–89 (Bankr. E.D.N.Y. 2009) (denying § 362(d)(4)

relief notwithstanding successive filings) — of which the petition itself was a part, *In re Sterling*, 543 B.R. 385 (Bankr. S.D.N.Y. 2015), and the movant bears the initial burden on every element. *In re Lee*, 467 B.R. 906 (B.A.P. 6th Cir. 2012); *see* 2 Norton Bankr. L. & Prac. 3d § 43:49 (July 2026 update) (courts "require the following explicit findings: (i) the bankruptcy case is part of a scheme, (ii) the object of the scheme was to hinder, delay or defraud creditors, (iii) the scheme involved either (a) a transfer of some interest in real property without the secured creditor's consent or (b) multiple bankruptcy filings affecting the property"). Congress enacted the provision against a specific evil: the abusive practices of "mortgage consultants" and "foreclosure specialists" who traffic in serial filings and fractional-interest transfers to stall foreclosures. 3 Collier ¶ 362.05[19][a] (citing Final Report of the Bankruptcy Foreclosure Scam Task Force, 32 Loy. L.A. L. Rev. 1063 (1999)). "[T]he mere fact of more than one filing does not establish" a scheme.

26. Every case Movant cites involved conduct absent here. *In re GEL, LLC*, 495 B.R. 240 (Bankr. E.D.N.Y. 2012), and *In re Merlo* involved successive filings by different, affiliated entities shuttling the same property among debtors to generate serial stays. *In re Procel*, 467 B.R. 297 (S.D.N.Y. 2012), involved four bankruptcy filings and unrecorded transfers of fractional property interests among multiple individuals. This Debtor has never transferred the Property or any interest in it; the same entity, fully disclosed, filed one prior case and this one; and between the two it did what genuine reorganizing debtors do — filed schedules, obtained take-out financing, and proposed a 100% plan. Courts deny *in rem* relief on records far busier than this one. *In re Ford*, 522 B.R. 829 (Bankr. D.S.C. 2014) (four cases over fourteen years; no *in rem* relief where debtor had made substantial payments); *In re Taal*, 520 B.R. 370 (Bankr. D.N.H. 2014) (multiple prior filings and schedule errors did not establish a scheme). In each, as here, the debtor's conduct reflected genuine — if imperfect — efforts to address the debt, not a plot to evade it.

27. Nor is the delay incident to this case the hindrance the statute targets. Chapter 11 necessarily delays creditors; if that alone were a "scheme to delay," every second filing would forfeit the stay, and §§ 362(c)(3), 362(c)(4) and 362(d)(3) — where Congress prescribed the actual consequences of repeat and single-asset filings — would be surplusage. What the cases find instead is strategic abuse: six "strategically timed" filings in *Montalvo*, 416 B.R. at 387; tag-team filings by a debtor and his spouse in *Behrens v. U.S. Bank N.A. (In re Behrens)*, 501 B.R. 351 (B.A.P. 8th Cir. 2013), *aff'd*, 2014 U.S. App. LEXIS 15581 (8th Cir. Aug. 7, 2014); eight years of filings in *In re Danley*, 540 B.R. 468 (Bankr. M.D. Ala. 2015). Here there are two filings by the same, fully disclosed debtor: the first stopped a sale and produced a 100% plan supported by a countersigned $30,000,000 commitment; the second became necessary only when that commitment collapsed at the eleventh hour through no act of the Debtor. A refiling precipitated by a stranger's withdrawal is the antithesis of a plan or design. Movant's prediction that the Debtor "will file a third bankruptcy," Mot. ¶ 42, is speculation stacked on an evidentiary record that contains no affidavit at all — and it is contradicted by the only sworn evidence before the Court, which shows financing in underwriting with approval expected on or before September 25, 2026, weeks before the plan deadline. Abitbol Decl. ¶ 6. A two-year *in rem* order recorded against a family's principal residence is an extraordinary remedy; it is not available on attorney argument and a docket sheet.

**POINT V: THE CLAIM ITSELF IS DISPUTED, AND THIS COURT IS THE PROPER FORUM TO RESOLVE IT**

28. Movant's asserted claim of $5,136,413.69 exceeds the adjudicated Referee's Report figure by some $340,000, on the strength of default-rate interest at 24% per annum, 5% late charges, layered "deferred" default interest, late fees and extension fees carried across the October 2024 and February 2025 extension agreements, and attorneys' fees and "release preparation fees." The Debtor does not ask this Court to revisit the Judgment of Foreclosure and Sale; it stands. But

everything Movant asserts beyond the adjudicated $4,796,344.58 — default-rate interest accruing since August 22, 2025, advances, fees and charges — has been adjudicated nowhere, and § 506(b) commits its allowance to this Court: fees, costs and charges only to the extent "reasonable," and postpetition interest at a default rate only to the extent equity permits. The Debtor has also scheduled and expressly retained its affirmative claims against Movant and Stormfield Capital LLC under HOEPA, TILA and Regulation Z, RESPA and Regulation X, civil RICO, the New York Banking Law, GBL § 349, Judiciary Law § 487, and the common law — claims that, under New York's permissive-counterclaim practice, the Debtor was not required to interpose in the foreclosure and that the default judgment therefore did not extinguish. Whether the corporate-borrower structure Movant dictated can shield the loan from the consumer-protection statutes is a merits question for an adversary proceeding; on this Motion it suffices that the claims are colorable, scheduled, and property of the estate under § 541. Terminating the stay would strip the estate of the claims-allowance process that exists precisely for disputes of this kind.

29. The Debtor's contentions are not conjured for this Motion. In another chapter 11 case pending in this District, *In re 63 Mill River Road LLC*, Case No. 8-26-71066-jpm (Bankr. E.D.N.Y.), the same Stormfield lending platform — there through Stormfield Capital Funding I, LLC — employed the identical structure against another family's home: a written demand, in its own letter of intent, for "[a] single-purpose real estate entity acceptable to the lender"; a recital that the loan proceeds were for "[c]ommercial purposes only"; personal guaranties from all members of the very entity interposed to relabel the transaction; a default rate raised to 24% per annum; a default judgment of foreclosure; and a proof of claim filed in the bankruptcy court. Counsel for the Debtor is preparing federal litigation against the Stormfield entities arising from that transaction. Whether that pattern is actionable will be decided on the merits in due course; what matters on this

Motion is that the Debtor's retained claims describe a documented, recurring lending structure — not a posture improvised to resist stay relief.

**POINT VI: IN THE ALTERNATIVE, ANY RELIEF SHOULD BE CONDITIONING, NOT TERMINATION**

30. Section 362(d)(1) authorizes relief "such as by terminating, annulling, modifying, or conditioning" the stay — a menu whose breadth "underscore[s]" the flexibility Congress built into section 362. 3 Collier ¶ 362.07[1]. If the Court concludes Movant is entitled to anything, the proportionate remedy on this record is a conditioned stay — for example, adherence to the existing December 1, 2026 plan-filing deadline or such earlier date as the Court fixes, a status report to the Court promptly upon the financing approval the Abitbol Declaration anticipates on or before September 25, 2026 (Abitbol Decl. ¶¶ 6, 8), continued maintenance of insurance with proof to the United States Trustee, and timely operating reports — rather than termination, and a fortiori rather than in rem relief. Movant's own notice concedes there is no emergency: Movant "consents to the automatic stay remaining in effect until the Court orders otherwise." Notice of Motion at 2. And the forbearance is well placed: Congress allocated the burdens of § 362(g) on the implicit premise that "the dry property rights of the creditor must be balanced against very human concerns" — here, the roof over the heads of the Debtor's principal and his family, protected by an equity cushion that pays Movant in full with interest. 2 Norton Bankr. L. & Prac. 3d § 43:54 (July 2026 update).

**CONCLUSION**

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York
August 30, 2026

**DAHIYA LAW OFFICES LLC**

Attorneys for the Debtor and Debtor in Possession

By: /s/ Karamvir Dahiya
Karamvir Dahiya, Esq.
111 John Street, Suite 1860
New York, New York 10038
Tel.: (212) 766-8000
karam@dahiya.law

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**------------------------------------------------------------x**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **10 SHEPHERDS LN MAP LLC,** | **Case No. 8-26-73055-las** |
| **Debtor.** | |

**------------------------------------------------------------x**

**DECLARATION OF FREDDY ABITBOL PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF THE DEBTOR'S OPPOSITION TO THE MOTION OF SECURE BRIDGE FUND 1, LLC FOR IN REM RELIEF FROM THE AUTOMATIC STAY**

I, Freddy Abitbol, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Chief Executive Officer and President of Hypotec, Inc. ("Hypotec"), a mortgage lending and brokerage firm. I am a licensed mortgage loan originator, NMLS No. 331653. I have worked in the residential and commercial mortgage industry for many years and am familiar with the underwriting, appraisal, and closing processes for loans of the kind described below.

2. I submit this declaration in support of the opposition of 10 Shepherds LN MAP LLC (the "Debtor") to the motion of Secure Bridge Fund 1, LLC ("Secure Bridge") for in rem relief from the automatic stay [ECF No. 10]. Except where stated to be on information and belief, the facts set forth in this declaration are based on my personal knowledge and on records of Hypotec maintained in the ordinary course of its business, and if called as a witness I could and would testify competently to them.

3. For the last several months, I have been working with Thomas K Makkos, the Debtor's Operating Member, to arrange refinancing in connection with the real property at 10 Shepherds Lane, Port Washington (Sands Point), New York (the "Property"), so that the mortgage debt asserted against the Property by Secure Bridge can be paid. That effort is active and ongoing.

4. The strategy we pursued initially was to cross-collateralize the loan with multiple properties owned by Mr. Makkos. Lenders in this market advance only a percentage of appraised collateral value, and the proceeds available against the Property alone, at prevailing loan-to-value advance rates, would not have covered the full payoff and the costs of the transaction; the additional collateral was intended to raise the total proceeds so that there would be no cash shortfall at closing.

5. While the cross-collateralized loan was in underwriting, we received appraisal reports on the collateral, and certain values came in below the values we were expecting. That reduced the total loan amount the lender would advance under that structure, and it did not proceed.

6. We have since pivoted to refinancing other properties owned by Mr. Makkos, which will generate sufficient cash to bridge the shortfall so that the transaction relating to the Property can be completed. That file is currently in underwriting, and we are looking to receive an approval on or before September 25, 2026. If the approval issues as expected, I anticipate the financing can proceed to closing promptly thereafter in the ordinary course.

7. On August 30, 2026, I set out the status of these efforts in an email to the Debtor's counsel, copied to Mr. Makkos. A true and correct copy of that email is annexed hereto as Exhibit 1.

8. Hypotec is continuing to work actively on this financing. I will keep the Debtor and its counsel informed of material developments, including the receipt of the approval referred to above, and I am prepared to provide the Court with an updated status at or before any adjourned hearing on Secure Bridge's motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2026

at Boca Raton, Florida

____________________________________
FREDDY ABITBOL
Chief Executive Officer and President
Hypotec, Inc.
NMLS No. 331653

# EXHIBIT 1

Gmail

KD <karam@dahiya.law>

# Update - Refinance 10 Shepherds LN.

1 message

**Freddy Abitbol** <freddy@hypotec.com> Sun, Aug 30, 2026 at 7:03 PM
To: "Karam@dahiya.law" <Karam@dahiya.law>
Cc: THOMAS MAKKOS <makkosthomas@gmail.com>, VITO GIANNOLA <vgiannola@giannola-law.com>

Dear Karam,

Per our conversation I am writing this email to explain where we stand currently with the refinance of the property 10 Shepherds LN.

Over the last few months our strategy was to cross collateralize multiple properties that Mr. Makkos has due to the lack of equity in the subject property.

We were hoping that this strategy would allow to provide enough collateral to make it so we would not be short on cash to bridge the shortfall.

Unfortunately, while in underwriting we received the appraisal reports and values we were expecting came in short making it so the total loan amount was reduced bringing us back to square one.

We have since pivoted to refinancing other properties that will give us sufficient cash to bridge the shortfall. The file is currently in underwriting, and we are looking to receive an approval on or before 9/25.

If you need further clarification, please don't hesitate to contact me.

Thank you,

HYPOTEC
A new way of lending

**Freddy Abitbol**
CEO | President



Begin Your Digital Application

Work. (844) 497-6832 Ext. 2222
Mobile. (213) 280-2008
NMLS #: 331653
www.Hypotec.com
Schedule a call

We're passionate about great service. Let us know your thoughts on what we're doing well and where we can improve.

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to which they are addressed. If you have received this email in error, please note that any use, copying or distribution of this e-mail, in whole or in part, is strictly prohibited. Please notify the sender by return e-mail of the error and delete this e-mail from your system. Finally, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 10 SHEPHERDS LN MAP LLC, | Case No. 8-26-73055-las |
| Debtor. | |

---------------------------------------------------------------x

**DECLARATION OF KARAMVIR DAHIYA PURSUANT TO 28 U.S.C. § 1746 REQUESTING THAT THE COURT ACCEPT THE DEBTOR'S LATE-FILED OBJECTION TO SECURE BRIDGE FUND 1, LLC'S MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY**

I, Karamvir Dahiya, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the principal of Dahiya Law Offices LLC, counsel to 10 Shepherds LN MAP LLC, the debtor and debtor in possession (the "Debtor"). I submit this declaration to accompany the Debtor's objection (the "Objection") to the motion of Secure Bridge Fund 1, LLC ("Movant") for in rem relief from the automatic stay [ECF No. 10] (the "Motion"), and respectfully to ask the Court to accept the Objection although it is filed after the objection deadline stated in the notice of motion. The facts set forth below are within my personal knowledge.

2. The Motion was filed on August 17, 2026 and noticed for hearing on September 3, 2026 at 10:00 a.m. The notice of motion fixed August 27, 2026 as the date by which objections were to be filed. The Objection is being filed after that date, together with this declaration.

3. The fault is mine, and mine alone. When the Motion was received, I calendared the September 3, 2026 hearing date but miscalendared the return date of the Motion, and the separate August 27, 2026 objection deadline was not entered in the Firm's calendar. I discovered the error in the course of preparing for the September 3 hearing, and immediately turned to completing and filing the Debtor's opposition. Neither the Debtor nor its Operating Member, Thomas K Makkos, had anything to do with the error; the Debtor should not lose its opportunity to be heard on a motion

of this consequence — a request for a two-year in rem order against its sole asset, the home of Mr. Makkos and his family — because of its counsel's calendaring mistake.

4. Under Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court may accept an act done after the expiration of a specified period "where the failure to act was the result of excusable neglect." The governing standard is equitable and considers all relevant circumstances, including the danger of prejudice, the length of the delay and its potential impact on the proceedings, the reason for the delay, and whether the movant acted in good faith; the concept encompasses precisely this kind of "inadvertence, mistake, or carelessness" of counsel. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 395 (1993); *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122–24 (2d Cir. 2005).

5. Each consideration favors acceptance here. The delay is a matter of days, and the September 3, 2026 hearing date is unaffected. The prejudice to Movant is minimal to none: the Motion rests entirely on the state-court record and the argument of counsel, Movant's own notice of motion states that Movant "consents to the automatic stay remaining in effect until the Court orders otherwise," and Movant will have the Objection in hand before the hearing. The reason for the delay is an isolated docketing error by counsel, promptly corrected upon discovery. And the Debtor has acted in good faith throughout: in the interval it completed its schedules and statements, and its opposition is substantive — directed to the absence of any evidentiary support for the Motion, an equity cushion of more than $2.6 million, and the active refinancing effort described in the accompanying declaration of Freddy Abitbol.

6. Should the Court conclude that Movant requires additional time to reply in light of the timing, the Debtor has no objection to the Court affording Movant a reasonable opportunity to do so, or to a brief adjournment of the hearing for that purpose.

7. I apologize to the Court and to counsel for Movant for the error. I have reviewed the Firm's calendaring practices and will ensure that objection deadlines are docketed separately from hearing dates so that this does not recur.

8. For these reasons, I respectfully request that the Court accept the Objection as timely filed pursuant to Rule 9006(b)(1), deem it part of the record on the Motion, and grant such other and further relief as the Court deems just.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 30, 2026

/s/ Karamvir Dahiya
Karamvir Dahiya, Esq.
Dahiya Law Offices LLC
Counsel for the Debtor and Debtor in Possession
111 John Street, Suite 1860
New York, New York 10038
Tel.: (212) 766-8000
karam@dahiya.law